UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENESIS TORRES,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>BREND RESTORATION SERVICES INC., et al.,<br>　　　　　　　　　　Defendants. | 22 Civ. 1191 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

　　Plaintiff Genesis Torres brings this gender discrimination, hostile work environment, sexual harassment, constructive discharge, and retaliation lawsuit against Defendants Brend Restoration LLC, and Brend Restoration Services, Inc. (collectively "Brend" or "Defendants") under Title VII of the Civil Rights Act of 1964 ("Title VII") and parallel state and city statutes. *See generally* Am. Compl., ECF No. 16. Before the Court is Defendants' motion for summary judgment pursuant to Rule 56.[1] *See* ECF No. 49. For the reasons stated below, Defendants' motion for summary judgment is **DENIED.**

## BACKGROUND

　　The following facts are taken from the parties' Rule 56.1 statements and evidentiary submissions in connection with Defendants' motion. The facts are either undisputed or, if disputed, resolved in the light most favorable to Plaintiff as the non-moving party, with all reasonable inferences drawn in her favor.[2] *See Horn v. Medical Marijuana, Inc*., 80 F.4th 130,

---

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[2] Defendants filed a Rule 56.1 Statement, *see* Defs.' Rule 56.1 Stmt., ECF No. 52. Plaintiff then filed a Counterstatement, *see* Pl.'s Rule 56.1 Counterstmt., ECF No. 54-9, and Defendants filed a

135 (2d Cir. 2023). The Second Circuit has emphasized that in the context of employment discrimination, the Court is "required to accept all sworn statements by [Plaintiff] as to matters

---

Response to Plaintiff's Counterstatement, *see* Defs.' Rule 56.1 Resp., ECF No. 58. The Court notes that the parties did not comply with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56.1, which require a party moving for or opposing summary judgment to cite to "*particular parts* of materials in the record." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Indeed, "in order to survive [or prevail on] a motion for summary judgment, [a party's] counsel must *specifically identify relevant facts* and explain why those facts justify denying [or granting] the summary judgment motion." *Collins v. City of New York*, No. 14 Civ. 8815, 2017 WL 11582468, at *2 (S.D.N.Y. July 10, 2017) (Nathan, J.) (emphasis added).

    First, Defendants' Response to Plaintiff's Counterstatement "admit[ed] and den[ied]" various paragraphs without specifying to which statements it referred. *See* Defs.' Resp. ¶¶ 50-55. Second, Defendants omitted any citations to relevant facts, much less an explanation as to why those facts justified granting their summary judgment. *See, e.g.,* Defs.' Resp. ¶¶ 27, 50, 58, 92. Finally and most critically, Local Rule 56.1 does not allow for a "response" to a Rule 56.1 Counterstatement. *See* Loc. Civ. R. 56.1. Furthermore, Defendants did not ask for leave to file its Response to Plaintiff's Counterstatement.

    Plaintiff's Rule 56.1 Counterstatement is also deficient. Like Defendants, Plaintiff failed to "specifically identify relevant facts," and instead repeatedly cited all, or nearly all paragraphs within declarations. *See* Pl.'s Rule 56.1 Counterstmt. ¶¶ 9, 11-12, 22. Second, Plaintiff disputes several of Defendants' facts on the ground that she has no knowledge, which is not a valid basis for disputing a factual statement. *See Herman v. Town of Cortlandt, Inc.*, No. 18 Civ. 2440, 2023 WL 6795373, at *1 n.2 (S.D.N.Y. Oct. 13, 2023) (finding the non-movant plaintiff's Rule 56.1 response "deficient" because it "improperly dispute[d] one of Defendant's asserted facts by stating that he 'has no knowledge of the truth or falsity' of the asserted fact at issue"), *see e.g.,* Pl.'s Rule 56.1 Counterstmt. ¶¶ 1-3, 5, 15, 18, 21 ("Lack knowledge to admit or deny"). Moreover, both parties improperly interjected arguments and/or immaterial facts in response to facts. *See, e.g., id.* ¶ 11, 20, 88-90.

    Faced with Rule 56.1 deficiencies, a court has "considerable discretion in fashioning a remedy to address" these failures. *Emanuel v. Griffin*, No. 13 Civ. 1806, 2015 WL 1379007, at *2 (S.D.N.Y. Mar. 25, 2015). A court can deem a fact admitted when a party fails to respond to the fact asserted by adverse party or responds without citing to the record. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party [ ] fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

    First, the Court will disregard improper legal arguments or conclusory assertions. The Court is mindful that the "[t]he local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001). Since the Court must resolve all permissible factual inferences in the light most favorable to Plaintiff as the non-moving party "the Court . . . will undertake its own review of the record referenced by Plaintiff[ ] in an effort to determine whether that evidence is sufficient to raise a genuine question of material fact," *Emanuel*, 2015 WL 1379007, at *2.

on which she [is] competent to testify, including what she did, what she observed, and what she was told by company managers." *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 46 (2d Cir. 2019).

In April 2019, Unibud Restoration Corp. ("Unibud") hired Plaintiff to work as a construction laborer at a construction site in the Bronx. *See* Defs.' Rule 56.1 Stmt. ¶ 4, ECF No. 52; Pl.'s Rule 56.1 Counterstmt. ¶ 4, ECF No. 54-9. Shortly after being hired, Plaintiff's manager, Carlos Uribe ("Uribe") sent her inappropriate texts and phone calls. Pl.'s Rule 56.1 Counterstmt. ¶ 6. In May 2019, Plaintiff reported Uribe's behavior to Unibud's owner, but they took no action. *Id.* ¶ 8; Defs.' Rule 56.1 Stmt. ¶¶ 7-8.

A month later, in June 2019, Unibud assigned Plaintiff to work at 100 Vandam Street, New York, NY ("100 Vandam"). *See* Defs.' Rule 56.1 Stmt. ¶ 9; Pl.'s Rule 56.1 Counterstmt. ¶ 9. Plaintiff worked at the 100 Vandam worksite for Brend Defendants through their subcontractor, Unibud, and was paid in cash by Unibud. *See* Defs.' Rule 56.1 Resp. ¶ 80, ECF No. 58; Pl.'s Rule 56.1 Counterstmt. ¶¶ 15-16. After being transferred to 100 Vandam, Uribe did not send Plaintiff further inappropriate texts but continued to harass her at work. *See* Add'l Torres Dep. Tr. 62:14-63:11, ECF No. 55-1; Pl.'s Dep. Tr. 144:3-14, ECF No. 54-5.

The parties agree that Marek Sudol ("Sudol") is a Brend employee who worked at 100 Vandam with Plaintiff. *See* Defs.' Rule 56.1 Resp. ¶ 41. Because Sudol does not speak Spanish, *see* Pl.'s Dep. Tr. 73:3-4, Uribe or Walter Rosso ("Rosso") often translated for him. *Id.* at 79:8-16. Daily, Sudol informed Uribe of the "action plan" and "[Uribe] then relayed those work commands, tasks and assignments to Plaintiff and other laborers at the Vandam Project." Defs.' Rule 56.1 Resp. ¶ 68. The parties disagree about whether Sudol was Brend's sole employee on the project site. *See* Defs.' Rule 56.1 Resp. ¶ 47; Pl.'s Rule 56.1 Counterstmt. ¶ 11; Defs.' Rule

3

56.1 Stmt. ¶ 11.  Plaintiff contends Rosso is Brend's foreman, while Defendants dispute this. *See* Defs.' Rule 56.1 Resp. ¶¶ 30, 41.

Plaintiff Torres filed this lawsuit on February 11, 2022.  *See* Compl., ECF No. 1. Plaintiff and Defendants Unibud Restoration Corp., Krzystof Zagroba, and Robert Zawadski reached a settlement on August 29, 2022.  *See* ECF No. 22.  On February 2, 2023, on consent of Plaintiff Torres, all claims against Defendant Uribe were dismissed, leaving only the Brend Defendants in this lawsuit.  *See* ECF No. 28.  On October 30, 2023, the case was reassigned to the undersigned.  *See* Oct. 30, 2023 Min. Order, ECF No. 46.  On November 16, 2023, Brend Defendants filed their motion for summary judgment, *see* ECF No. 49, which is now fully briefed before the Court.

## LEGAL STANDARDS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "A material fact is one that would affect the outcome of the suit under the governing law, and a dispute about a genuine issue of material fact occurs if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party."  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).  When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing materials in the record.  *See* Fed. R. Civ. P. 56(c)(1)(A).

In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor."  *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021).  And the Court must "give credence to the evidence favoring the nonmovant as well as that evidence supporting the

4

moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Davis-Garett*, 921 F. 3d at 46 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000)).  Nonetheless, it is well-established that "'[t]he mere existence of a scintilla of evidence in support of the [non-movant] plaintiff's position will be insufficient' to defeat a summary judgment motion," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986)), and that the non-movant must create more than "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

A non-movant's "self-serving statement, without direct or circumstantial evidence to support the charge [of discrimination], is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Tr. & Clearing Corp.*, No. 06 Civ. 9959, 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008), *aff'd*, 604 F.3d 712 (2d Cir. 2010).  Likewise, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000); *see also Ridinger v. Dow Jones & Co. Inc.*, 651 F.3d 309, 317 (2d Cir. 2011) (stating that to overcome a motion for summary judgment, a non-movant may not rely on "conclusory statements, conjecture, and inadmissible evidence"); *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 244 (S.D.N.Y. 2015) (stating that a non-movant "cannot rely on the mere allegations or denials contained in the pleadings" to save her case); *Conahan v. MedQuest Ltd.*, No. 20 Civ. 1325, 2022 WL 16748585, at *3 (S.D.N.Y. Nov. 7, 2022) (stating that "a [non-moving] plaintiff must provide more than conclusory allegations to resist a motion for summary judgment").

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1224 (2d Cir. 1994).

## DISCUSSION

The grounds for Defendants' motion for summary judgment are on the issue of joint employer liability under Title VII. *See generally* Defs.' Mem. Supp. Mot. for Summ. J., ECF No. 51. Defendants seek summary judgment on Plaintiff's Title VII claim on this basis and ask the Court to decline supplemental jurisdiction as to Plaintiff's state law claims. *See id.*

Defendants' motion is **DENIED** for the reasons given below.

### I.   Joint Employer under Title VII

#### A.  Legal Standard

Title VII makes it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Because Title VII is limited to discrimination by an employer, "[t]he plausible existence of a requisite employer-employee relationship is thus a cornerstone of an adequately pled Title VII complaint." *Felder v. U.S. Tennis Ass'n*, 27 F.4th 834, 838 (2d Cir. 2022).

But "in alleging an employer-employee relationship, an employee is not squarely limited to claims against his or her formal employer." *Id*. When "an employee, formally employed by one entity . . . has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity," this "may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d

193, 198 (2d Cir. 2005). Under the joint-employer doctrine, "an employee may assert Title VII liability against a constructive employer—an entity that shares in controlling the terms and conditions of a plaintiff's employment." *Felder*, 27 F.4th at 838.

In *Felder*, the Second Circuit held that in the Title VII context, an entity other than the employee's formal employer is jointly liable if the "entities, according to common law principles, share *significant control*" over the terms and conditions of the plaintiff's employment. *Id.* at 843 (emphasis added). "Because the exercise of control is the guiding indicator, factors indicating a joint-employment relationship may vary depending on the case, and any relevant factor may be considered so long as it is drawn from the common law of agency." *Id.* at 844. Relevant factors a court can consider include "control over an employee's hiring, firing, training, promotion, discipline, supervision, and handling of records, insurance, and payroll," *id.* at 838, but "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive." *Id.* at 844 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324 (1992)). At the crux of this inquiry is "the element of control" over Plaintiff. *See Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 371 (2d Cir. 2006).[3]

---

[3] The parties both cite to and apply various joint-employer tests, including the economic reality test, which is applicable in the Fair Labor Standards Act context and is thus inappropriate here. *See e.g.,* Pl.'s Opp'n, ECF No. 53 at 8, 10; Defs.' Mem. 3, ECF No. 51. Similarly, the Second Circuit has noted its sister circuits have relied on various joint-employer tests, including the common law principles test combined with the "economic realities test" but the Second Circuit noted that it did "not find it necessary to distinguish between these tests, emphasizing as other Circuits have that, in discerning a joint employment relationship, the principal guidepost is the element of control." *Felder*, 27 F.4th at 844 n.8. Following the Second Circuit in *Felder,* the Court applies the common law factors.

### B. Application

As explained below, there are questions of material fact that preclude summary judgment to Defendants.

### 1. Supervision

Most critically, there is a question of material fact as to the level of Defendants' daily supervision of Plaintiff. While no single factor is dispositive, the Second Circuit has explained that if "the first and most important factor—the manner and means test—contains significant contested facts," this makes "summary judgment inappropriate." *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 228 (2d Cir. 2008); *accord Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 117 (2d Cir. 2000) (holding that courts "should [ ] place special weight on the extent to which the hiring party controls the 'manner and means' by which the worker completes her assigned tasks"); *see also* Restatement (Second) of Agency § 220(1) cmt. d (1958) ("Although control or right to control the physical conduct of the person giving service is important and in many situations is determinative, the control or right to control needed to establish the relation of master and servant may be very attenuated.").

Notably, Defendants concede that Marek Sudol, Brend's on-site project manager, "told [Plaintiff's Unibud manager] Uribe what needed to be done each day and he would direct his workers," including Plaintiff, *see* Defs.' Rule 56.1 Resp. ¶ 68. But while Defendants acknowledge that "Brend through its project manager Sudol was on site to monitor the quality and progress of the work," they maintain that Sudol "did not direct Unibud workers." Defs.' Rule 56.1 Resp. ¶ 26.

Plaintiff disputes this. Plaintiff stated that Mr. Sudol issued the "'action plan,' work commands, tasks and/or assignments directly to Defendant U[ribe] via phone, text message and/or email, who then relayed those work commands, tasks and assignments to Plaintiff and

8

other laborers at the Vandam Project." Pl. Decl. ¶ 68. According to Plaintiff, Sudol also was "on the job eight hours every day," Pl. Dep. Tr. 66:4-6, would "check[] what was going on at the worksite," *id.* at 122:7-12, and would "complain" to Uribe if "something was not done right." *Id.* at 141:3-10. Plaintiff further stated that Brend directed her "day-to-day work activities," and she "only performed assigned work that was ordered, overseen and inspected by B[rend]." Pl.'s Decl. ¶¶ 30-31, ECF No. 54-3.

Plaintiff's deposition testimony is consistent. Plaintiff explains that Brend employee Marek Sudol "would normally gather [the workers] to speak about the project," Pl.'s Dep. Tr. 66:4-15, and "would come and check" that workers were performing their job correctly. *Id.* at 77:12-15; *see also id.* at 122:7-12. A coworker further corroborates Brend's supervisory role, noting that "[o]n at least one occasion Plaintiff and I witnessed that, B[rend's] project manager, Mr. Sudol issue[d] work instructions to one of our coworkers." Andrea Toledo ("AT") Decl. ¶ 9, ECF No. 54-4. Unibud's co-owners confirm that Brend supplied the daily "action plan" and "issued daily work tasks to be completed by the workers at the Vandam Project, including Plaintiff." Robert Zawadaski ("RZ") Decl. ¶¶ 4-6, ECF No, 54-8; Kryztof Zagroba ("KZ") Decl. ¶¶ 4-6, ECF No. 54-7. These descriptions of Brend's supervisory relationship suggest the type of "close, pervasive control" over a worker that is the hallmark of an employment relationship. *Eisenberg*, 237 F.3d at 119.

Plaintiff's statements also create an issue of fact regarding Defendants' scheduling power. Plaintiff alleges she "witnessed Mr. Sudol's and Mr. Rosso's scheduling decisions were carried out through them issuing scheduling decisions directly through U[ribe]," Pl.'s Decl. ¶ 18, and that these decisions included "dictating which workers would work which shifts." *Id.* at ¶ 17. In response, Defendants argue that Plaintiff's "statement is not credible on its face. Her English is poor, and she provides no detail" of Brend's scheduling decisions. Defs.' Reply 5,

9

ECF No. 57.  But the credibility of Plaintiff's testimony on this point is a "determination[] for the jury, not the judge, to make."  *Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 76 (2d Cir. 2023) (citing *Liberty Lobby, Inc.*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [the judge] is ruling on a motion for summary judgment or for a directed verdict.")).

Plaintiff's statements also create an issue of fact with regard to Defendants' "power to take any disciplinary action they saw fit."  Pl.'s Decl. ¶ 14.  Plaintiff stated that Uribe "carri[ed] out Mr. Sudol's and Mr. Rosso's [disciplinary] decisions."  *Id.* ¶ 15.  Defendants counter that "Sudol did not have the power to discipline a Unibud worker nor did he."  Defs.' Rule 56.1 Resp. ¶ 38.  During her deposition, Plaintiff explained that "if something was not done right . . . Marek would go to Mr. Uribe and complain."  Pl.'s Dep. Tr. 141:6-10.  She further testified that, because Mr. Sudol did not speak Spanish, he "would tell Walter [Rosso], and Walter would explain" the issue to the worker.  *Id.* at 79:8-16.  Plaintiff's testimony on this point was corroborated by one of her coworkers.  *See* AT Decl. ¶¶ 15-16.

Because "the greatest emphasis should be placed . . . on the extent to which the hiring party controls the manner and means by which the worker completes his or her assigned tasks," the existence of genuine disputes of material facts on this factor alone is likely sufficient to foreclose summary judgment for Defendants.  *See Eisenberg*, 237 F.3d at 114.  Nonetheless, given that the Second Circuit has held that "all of the incidents of the relationship must be assessed and weighed with no one factor being decisive," *Felder*, 27 F.4th at 844 (2d Cir. 2022), the Court briefly considers other relevant common law factors.

2. **Other Factors**

***Hiring and Firing.*** The record is clear that "[i]n April 2019, Unibud, and not Brend, hired plaintiff as a construction laborer, after a phone interview with defendant Uribe to work at a Bronx job site." Pl.'s Rule 56.1 Counterstmt. ¶ 4; *accord* Defs.' Rule 56.1 Stmt. ¶ 4. Plaintiff conclusorily states that Brend "controlled all of [her] daily work activities . . . including the right to fire," Pl.'s Decl. ¶ 28, but during her deposition, she conceded she had not seen Mr. Marek ever "fire," "send somebody home," or "tell Mr. Uribe to fire someone." Pl. Dep. Tr. 140:15-23. And it is undisputed that Brend did not fire Plaintiff. *See* Pl.'s Rule 56.1 Counterstmt. ¶ 13; Defs.' Rule 56.1 Stmt. ¶ 13. If the existence of an employer-employee relationship depended solely on the ability to hire and fire, then summary judgment might be proper for Defendants. *See S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) ("A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory.").

***Training.*** There is a genuine dispute of fact as to Brend's control of training. While Plaintiff contends that Brend required her and her coworkers to attend a safety orientation training conducted by Mr. Sudol, *see* Pl. Decl. ¶¶ 17-19; Pl. Dep. Tr. 82:5-83:2, Defendants deny this. *See* Defs.' Rule 56.1 Resp. ¶¶ 44-46. Plaintiff alleges that Brend required her to attend the "training conducted in the basement of 100 Vandam" and Mr. Sudol conducted this "safety orientation and training." Pl. Decl. ¶¶ 17-19; *see also* Pl.'s Dep. Tr. 82:5-83:2, 83:13-20. Her former coworker corroborates Plaintiff's statement, *see* AT Decl. ¶¶ 20-22, and the daily workers log sheet reads in part: "I . . . Foreman for Brend, affirm that the above list of employees . . . have been through the [safety] orientation." *Id.* ¶ 10; ECF No. 54-2 (worker log).

***Records.*** There is also a genuine dispute of fact concerning other common law factors, including the "handling of records," *Felder*, 27 F.4th at 838. It is undisputed that Unibud, and

not Brend, dispersed weekly wages to Plaintiff in cash. *See* Defs.' Rule 56.1 Resp. ¶ 80; Pl.'s Rule 56.1 Counterstmt. ¶¶ 15, 26, 80. The parties, however, dispute who maintains the worker's daily log. *See* Defs.' Rule 56.1 Resp. ¶ 35; Pl.'s Rule 56.1 Counterstmt. ¶ 16; Defs.' Rule 56.1 Stmt. ¶ 16. The "daily workers' log sheet" reads in part, "I . . . Foreman for Brend, affirm that the above list of employees is an accurate list of all our employees on this project today." AT Decl. ¶ 10; ECF No. 54-2 (worker log).

\* \* \*

The Court concludes that, viewing the circumstances of this case in the light most favorable to Plaintiff, the non-moving party, Torres has demonstrated a genuine factual conflict regarding the degree of control Brend exercised over her. This is particularly so with respect to factors such as Defendants' power to direct Plaintiff's daily work, and to train, and discipline workers, such that a jury "may properly conclude that a constructive employer-employee relationship exists" because Defendants "otherwise control the employee's daily employment activities," *Felder*, 27 F.4th at 844. Accordingly, Plaintiff's Title VII claim withstands Defendants' motion for summary judgment.

## CONCLUSION

For the reasons given above, Defendants' motion for summary judgment is **DENIED.** The parties shall file a joint status letter within **two weeks** of publication of this Opinion & Order. The letter shall state whether the parties request a referral for mediation through the District's Mediation Program or before the assigned Magistrate Judge. Alternatively, if the parties do not believe settlement discussions would be productive, the letter shall state the parties' availability for trial in December 2024 through February 2025.

The Clerk of Court is respectfully requested to terminate **ECF No. 49**.

SO ORDERED.

Dated: September 27, 2024
       New York, New York

*[signature]*

DALE E. HO
United States District Judge
